Filed 7/24/24  P. v. Smith CA4/2
Reposting correct version

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E081229, E082184 |
| v. | (Super.Ct.No. INF1600624) |
| WILLIE ROY SMITH III, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.
Reversed with directions.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and
Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General,
Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff
and Respondent.

1

Willie Roy Smith appeals from the denial of his Penal Code section 1172.6 petitions to vacate his attempted murder conviction from 2018. (Unlabeled statutory citations refer to the Penal Code.) Smith argues that the trial court erred by denying his petitions at the prima facie stage, because he sufficiently alleged a prima facie case for relief and the record of conviction does not contain facts refuting his allegations. (*People v. Lewis* (2021) 11 Cal.5th 952, 971-972 (*Lewis*).) We agree with Smith and therefore reverse and remand with directions to issue an order to show cause under section 1172.6, subdivision (c).

BACKGROUND

In 2016, the People charged Smith with the attempted murder of Jane Doe. At Smith's preliminary hearing, Doe provided the following testimony.[1] On May 7, 2016, Doe was walking to the grocery store with her and Smith's three-month-old child when Smith pulled up alongside her and offered her a ride. Doe accepted and got into the back seat with the baby. On the way back from the store, instead of taking Doe home, Smith drove to a remote location and demanded that Doe have sex with him. When she refused, Smith pulled out a gun and shot her six times. The bullets struck her in the head, neck, and hands. With Doe bleeding in the back seat, Smith drove to a liquor store, returned to the car with alcohol, and continued to drive, telling Doe, "We going to die. I'm sorry. I

---

[1] "Facts taken from the preliminary hearing transcript are provided for background purposes and to provide context for the parties' arguments. . . . [W]e take no position on whether this testimony from the preliminary hearing is admissible to determine [Smith's] eligibility for resentencing." (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2 (*Flores*).)

have to do it. We going to die." Doe passed out while Smith was driving. When she regained consciousness, they had been pulled over, and she was being placed into an ambulance.

In March 2018, Smith pled guilty to one count of deliberate and premeditated attempted murder (§§ 664, 187, subd. (a)), one count of dissuading a witness (§ 136.1, subd. (a)), and one misdemeanor count of driving under the influence (Veh. Code, § 23152, subd. (b)). He also admitted that he personally and intentionally discharged a firearm and caused great bodily injury within the meaning of section 12022.53, subdivision (d) during the commission of the attempted murder. The parties stipulated that the preliminary hearing transcript provided a factual basis for the plea. Smith was sentenced to the agreed term of 32 years to life plus 2 years in state prison.

In April 2023, Smith filed a petition to vacate his attempted murder conviction under section 1172.6. His petition alleged that (1) an information had been filed against him that allowed the prosecution to try him for attempted murder under the natural and probable consequences doctrine; (2) he accepted a plea offer in lieu of a trial at which he could have been convicted of attempted murder; and (3) he could not presently be convicted of attempted murder because of changes to accomplice liability for murder made by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).

At the prima facie hearing on the petition, the People argued that Smith was ineligible for relief because he was convicted under a still-valid theory of murder. Relying on *People v. Patton* (2023) 89 Cal.App.5th 649 (*Patton*), review granted June 28,

2023, S279670, they argued that the preliminary hearing transcript, which the parties stipulated to as the factual basis for the plea, contained uncontroverted evidence that Smith was the direct perpetrator of the attempted murder. The trial court denied the petition, stating that it was "satisfied with [Doe's] eyewitness testimony that [Smith] was the person who shot her."

In May 2023, Smith filed another section 1172.6 petition identical to his first, which the court also summarily denied. At the prima facie hearing for that petition, the People reiterated their argument from the first hearing but informed the court that the California Supreme Court had granted review in *Patton*. In response, the court asked the parties if there was anything in the preliminary hearing transcript "that would suggest any other theory" of liability, and Smith's appointed counsel replied, "Nothing at all." Appointed counsel also acknowledged that Smith had stipulated to the preliminary hearing transcript as the factual basis for the plea.

Smith filed notices of appeal as to both orders denying his petitions, and we consolidated his appeals.

## DISCUSSION

Smith argues that the trial court erred by denying his petitions at the prima facie stage, because he sufficiently alleged a prima facie case for relief and the record of conviction does not contain facts refuting the allegations of his petitions. We agree.

4

I.      *Senate Bill 1437 and section 1172.6*

"The Legislature enacted Senate Bill 1437 'to more equitably sentence offenders in accordance with their involvement in homicides.'" (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).) Effective January 1, 2019, the new law eliminated the natural and probable consequences doctrine and narrowed the definition of first degree felony murder "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); Pen. Code, §§ 188, 189.) As relevant here, Senate Bill 1437 eliminated the natural and probable consequences doctrine for attempted murder by amending section 188 to provide that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill 1437 also created former section 1170.95, now section 1172.6, which provides a mechanism for retroactive application of the amended law to those convicted under prior law. (§ 1172.6.) In its current form, that provision applies not only to prior murder convictions but also to prior attempted murder or manslaughter convictions. (Stats. 2021, ch. 551, § 1; see also *Curiel*, *supra*, 15 Cal.5th at p. 511.)

The resentencing procedure under section 1172.6 begins with the filing of a petition containing a declaration that the petitioner has satisfied the following requirements for eligibility: (1) the complaint or information filed against the petitioner allowed the prosecution to proceed "under a theory of felony murder, murder under the

5

natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine"; (2) the petitioner was "convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder"; and (3) the petitioner "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subds. (a)(1)-(3).)

Upon the filing of a facially sufficient petition, the trial court must appoint counsel for the petitioner if requested, permit the People to file a response, permit the petitioner to file a reply, and "hold a hearing to determine whether the petitioner has made a prima facie case for relief."  (§ 1172.6, subd. (c); see generally *Lewis*, *supra*, 11 Cal.5th at pp. 971-972.)  If the court determines that the petitioner has made a prima facie case, then the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the conviction and to recall the sentence and resentence the petitioner on any remaining counts.  (§ 1172.6, subd. (d)(1).)

In *Lewis*, our Supreme Court explained the prima facie review as follows:  "Like the analogous prima facie inquiry in habeas corpus proceedings, '"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause."'"  (*Lewis*, *supra*, 11 Cal.5th

at p. 971.)  "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for . . . relief, the prima facie inquiry . . . is limited."  (*Id.* at pp. 966, 971.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion,'" and the court should not "make credibility determinations."  (*Id.* at pp. 972, 974.)

It follows that the only facts in the record of conviction that will refute a petitioner's allegations are those that were either admitted by the petitioner or found true beyond a reasonable doubt by a trier of fact.  (See *People v. Jenkins* (2021) 70 Cal.App.5th 924, 933-935; see also *Curiel*, *supra*, 15 Cal.5th at pp. 451-454 [facts in the record of conviction will ordinarily be given preclusive effect on prima facie review only if they satisfy the traditional elements of issue preclusion].)  As *Lewis* acknowledged, "the 'prima facie bar was intentionally and correctly set very low.'"  (*Lewis*, *supra*, 11 Cal.5th at p. 972.)  "'[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'"  (*Id.* at p. 971.)

II.     *Smith made a prima facie case for relief*

Whether the record of conviction demonstrates that a petitioner is ineligible for relief "'is a purely legal conclusion, which we review de novo.'"  (*People v. Ervin* (2021) 72 Cal.App.5th 90, 99, 101.)  Smith made a prima facie case for relief by alleging in his petitions that (1) the charging document filed against him for attempted murder allowed the prosecution to proceed under the natural and probable consequences doctrine, (2) he

7

was convicted of attempted murder after accepting a plea offer in lieu of a trial at which he could have been convicted of attempted murder, and (3) he could not presently be convicted of attempted murder because of the changes that Senate Bill 1437 made to section 188. Under *Lewis*, the trial court was required to treat those allegations as true and issue an order to show cause unless the record of conviction contains facts refuting Smith's allegations. (*Lewis*, *supra*, 11 Cal.5th at p. 974.)

Smith argues, and we agree, that the record of conviction contains no such facts. The trial court based its contrary conclusion on the fact that the preliminary hearing transcript contained uncontroverted evidence that Smith was the direct perpetrator. Smith contends that the court's reliance on the preliminary hearing transcript violated *Lewis's* prohibition against judicial factfinding at the prima facie stage. We agree.

A.     *The preliminary hearing transcript*

Our appellate courts "are split on the import of the preliminary hearing transcript in determining whether a petitioner has made a prima facie case for resentencing." (*Flores*, *supra*, 76 Cal.App.5th at p. 989.) Some courts have held that evidence presented at a preliminary hearing can, if uncontroverted, establish ineligibility and support the denial of a section 1172.6 petition at the prima facie stage. (*Patton*, *supra*, 89 Cal.App.5th at p. 649; *People v. Pickett* (2023) 93 Cal.App.5th 982, review granted Oct. 11, 2023, S281643; *People v. Mares* (2024) 99 Cal.App.5th 1158; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166.) Other courts, like the one that decided *Flores*, have held that such reliance on the preliminary hearing transcript constitutes impermissible

8

factfinding at the prima facie stage. (*Flores*, *supra*, 76 Cal.App.5th at pp. 991-992; *People v. Davenport* (2021) 71 Cal.App.5th 476, 482 (*Davenport*); *People v. Das* (2023) 96 Cal.App.5th 954, 962-964; *People v. Rivera* (2021) 62 Cal.App.5th 217, 238 (*Rivera*) [applying the same conclusion to a grand jury transcript].) Our Supreme Court has granted review in *Patton* to decide whether "the trial court engage[d] in impermissible judicial factfinding by relying on the preliminary hearing transcript to deny defendant's Penal Code section 1172.6 petition at the prima facie stage." (*Patton*, *supra*, S279670.)

While the issue is pending before our high court, we follow the line of cases that strictly adhere to the prohibition against judicial factfinding on prima facie review of a section 1172.6 petition. (See, e.g., *Davenport*, *supra*, 71 Cal.App.5th at p. 482 [concluding that "[t]he trial court engaged in 'impermissible factfinding' at the prima facie stage by relying on facts taken from the preliminary hearing transcript that were not stipulated to or admitted"]; accord, *Flores*, *supra*, 76 Cal.App.5th at p. 991.) When a court relies on preliminary hearing testimony to deny a petition at the prima facie stage, it is necessarily making a credibility determination. The testimony has no probative value unless the court finds it credible. The fact that the testimony is uncontroverted makes a court's reliance on it no less of a credibility determination—uncontroverted testimony can still be inaccurate. A preliminary hearing is not a trial, and its purpose is merely to determine whether there is sufficient evidence to hold the defendant to answer. (See generally *People v. Superior Court (Mendez)* (2022) 86 Cal.App.5th 268, 276.) The defendant consequently has little incentive to introduce conflicting evidence at a

9

preliminary hearing, and "a ruling holding a defendant to answer is in no way equivalent to a jury's factual finding or a defendant's admission." (*People v. Cooper* (2020) 54 Cal.App.5th 106, 124.) For these reasons, we find the *Patton* line of cases unpersuasive.

The People contend that the trial court's reliance on Doe's testimony at the preliminary hearing did not violate *Lewis*'s prohibition against factfinding because Smith stipulated to the preliminary hearing transcript as the factual basis for the plea. But that argument misunderstands the nature of the factual basis for a plea under California law. A stipulation to a factual basis for a plea is not an admission to particular facts of the offense.

In California, the trial court must inquire into the factual basis for any negotiated plea. (§ 1192.5, subd. (c); *People v. Hoffard* (1995) 10 Cal.4th 1170, 1180-1182.) The requirement exists because the prospect of "substantially reduced punishment" can be such a powerful "motivating factor for a plea" that a negotiated plea "creates an especially high risk the defendant will plead to a crime he or she did not commit and for which no factual basis can be established." (*Id.* at p. 1182.) The factual basis requirement thus "helps ensure that the 'constitutional standards of voluntariness and intelligence are met.'" (*People v. Holmes* (2004) 32 Cal.4th 432, 438 (*Holmes*).)

Because its purpose is to ensure that the plea was voluntary and knowing, "[t]he factual basis required by section 1192.5 does not require more than establishing a prima facie factual basis for the charges. [Citation.] It is not necessary for the trial court to interrogate the defendant about possible defenses to the charged crime [citation], nor does

10

the trial court have to be convinced of [the] defendant's guilt." (*Holmes*, *supra*, 32 Cal.4th at p. 441, fn. omitted.)  In addition, "[a] defendant is not required to personally admit the truth of the factual basis of the plea, which may be established by defense counsel's stipulation to a particular document." (*People v. French* (2008) 43 Cal.4th 36, 50-51.)  "Courts have consistently differentiated between an admission that a document or recitation contains a factual basis for a plea and an admission that statements in that document or recitation are true." (*People v. Hiller* (2023) 91 Cal.App.5th 335, 349-350.)  Thus, absent an indication that a defendant admitted the truth of particular facts, a stipulation that a factual basis for a plea exists is not a factual admission and "therefore cannot be used to demonstrate that [a section 1172.6 petitioner] admitted to acting with actual malice." (*Rivera*, *supra*, 62 Cal.App.5th at p. 235; accord, *Flores*, *supra*, 76 Cal.App.5th at p. 991 [petitioner's stipulation that the preliminary hearing transcript provided a factual basis for his guilty plea to murder was not an admission to any particular facts of the offense].)

Finally, we reject the People's assertion that, at the prima facie hearing on Smith's second petition, his appointed counsel conceded that he was the direct perpetrator.  At that hearing, appointed counsel acknowledged that Smith had stipulated to the preliminary hearing transcript as containing a factual basis for the plea and that there was no evidence in that transcript to suggest a theory of vicarious liability.  Those representations accurately describe the state of the record of conviction and, contrary to the People's characterization, do not constitute an admission regarding Smith's eligibility

11

for relief under section 1172.6.  It is undisputed that Smith stipulated to the preliminary hearing transcript as containing a factual basis for the plea and that Doe's testimony that Smith was the direct perpetrator was uncontroverted.  However, because of the prohibition against judicial factfinding and credibility determinations at the prima facie stage, neither the stipulation nor the testimony refutes the allegations of Smith's petitions.

For all of these reasons, we conclude that the trial court erred by denying Smith's petitions at the prima facie stage on the basis of the preliminary hearing transcript.

B.    *The guilty plea to premeditated attempted murder*

The People argue that there is an alternate basis for affirming the trial court's denial of Smith's petitions at the prima facie stage.  They assert that Smith is ineligible for relief as a matter of law because in pleading guilty to attempted murder he also admitted that the offense was willful, deliberate, and premeditated within the meaning of the penalty provision in section 664, subdivision (a).[2]  According to the People, Smith's plea constitutes an admission that he personally acted with a deliberate and premeditated intent to kill.  We disagree.

Section 664, subdivision (a) increases the punishment for attempted murder to life with the possibility of parole if the jury finds that the attempted murder was "willful, deliberate, and premeditated murder, as defined in Section 189."  (*People v. Favor* (2012) 54 Cal.4th 868, 875.)  As our Supreme Court explained in *Favor*, section 664, subdivision (a) is a penalty provision that applies to both direct perpetrators and

---

[2]    The information alleged that Smith "did willfully, unlawfully, and with malice aforethought attempt the willful, deliberate and premeditated murder of [Doe]."

12

accomplices who are liable under the natural and probable consequences doctrine. (*Id.* at p. 878.) This is because the provision "'requires only that the attempted murder itself was willful, deliberate, and premeditated.'" (*Id.* at p. 879.) For the provision to apply, it is not necessary that the defendant personally acted with a deliberate and premeditated intent to kill. Rather, "it is only necessary that the attempted murder 'be committed by one of the perpetrators with the requisite state of mind.'" (*Ibid.*)

Thus, in the absence of an allegation that Smith was the direct perpetrator, the fact that the People charged him with deliberate and premeditated attempted murder under section 664 did not preclude the prosecution from proceeding under the natural and probable consequences doctrine at trial. (*People v. Eynon* (2021) 68 Cal.App.5th 967, 978.) Additionally, the fact that Smith pled guilty to deliberate and premeditated attempted murder under section 664 does not mean that he admitted that he was the direct perpetrator. By pleading guilty to that offense, a defendant admits only "that a deliberate and premeditated murder was committed and that [the defendant] committed an act with the necessary intent to incur liability for that murder, on some unspecified theory." (*Ibid.*) The defendant does not thereby admit personally "act[ing] with deliberate and premeditated intent to kill." (*Ibid.*)

"This is the essential difficulty of interpreting the meaning of a plea to generic murder in the absence of a stipulation to the exact factual basis for the plea." (*Davenport*, *supra*, 71 Cal.App.5th at p. 484.) As the court explained in *Rivera*, although "a murder conviction after a plea has just as much 'weight and finality' as one after a trial . . . , this

13

does not mean that the theory underlying each type of conviction can be ascertained with the same degree of certainty." (*Rivera*, *supra*, 62 Cal.App.5th at p. 236.) "The fact that a petitioner was not 'convicted of felony murder or murder under a natural and probable consequences theory' (§ 1170.95, subd. (a)) at trial may be conclusively determined if, for example, the jury did not receive instructions on either theory." (*Ibid.*) "In contrast, when a petitioner has entered a plea to murder after being charged by information or indicted, the record of conviction will generally lack any comparable assurance of the basis for the conviction." (*Id.* at p. 237.) Smith's record of conviction lacks such an assurance. Because his murder charge did not contain an allegation that he was the direct perpetrator, "it is not speculation that the People could have proceeded on a natural and probable consequences theory at trial."[3] (*Das*, *supra*, 96 Cal.App.5th at p. 964.)

Although the record of conviction contains uncontroverted evidence to support a determination that Smith was the direct perpetrator, reaching that determination necessarily requires factfinding and credibility determinations, which are prohibited at the prima facie stage. (*Lewis*, *supra*, 11 Cal.5th at p. 974.) Because the record of

---

**3** For the first time at oral argument, the People argued that Smith's admission to the firearm enhancement in section 12022.53, subdivision (d), demonstrates as a matter of law that he was the direct perpetrator. The argument lacks merit. Section 12022.53, subdivision (d), does not require proof that the defendant acted with malice. (See *People v. Offley* (2020) 48 Cal.App.5th 588, 598 [the jury's true finding on the firearm discharge enhancement in § 12022.53, subd. (d), did not render the petitioner ineligible for relief under § 1172.6, because the enhancement "does not establish that the defendant acted with malice aforethought"].) Consequently, Smith's admission does not foreclose the possibility that the prosecution could have tried him under the natural and probable consequences doctrine if the case had gone to trial.

conviction does not contain facts establishing that Smith was convicted under a still-valid theory of murder, denial of his petitions without issuing an order to show cause was error.

DISPOSITION

The orders denying Smith's petitions are reversed, and the matter is remanded with directions to issue an order to show cause and to conduct an evidentiary hearing under section 1172.6, subdivision (d).

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

I concur:

CODRINGTON
J.

[*People v. Willie Smith III*, E081229]

RAMIREZ, P. J., Dissenting.

I disagree with the analysis of the majority opinion and acknowledge that the unsettled state of the law makes it almost pointless to write separately. However, I disagree with the "absolute" approach adopted by the majority in remanding for an evidentiary hearing any case in which the trial court considered the preliminary transcript, due to the proscription against making factual findings based on credibility determinations (see *People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*)), in light of the Supreme Court's grant of review in *People v. Patton* (2023) 89 Cal.App.5th 649 (*Patton*), review granted June 28, 2023, S279670, and *People v. Pickett* (2023) 93 Cal.App.5th 982 (*Pickett*), review granted October 11, 2023, S281643. Not every case in which a court considers the preliminary hearing transcript involves improper factual determinations or credibility determinations.

In determining whether the defendant made the requisite prima facie showing, the court may rely on the defendant's record of conviction. (*Lewis*, *supra*, 11 Cal.5th at p. 970; *People v. Flores* (2022) 76 Cal.App.5th 974, 988.) In cases where the conviction resulted from a guilty plea rather than a trial, the record of conviction may include the transcript of the defendant's preliminary hearing testimony when the transcript "reliably reflect[s] the facts of the offense for which the defendant was convicted." (*People v. Reed* (1996) 13 Cal.4th 217, 223; see *Pickett*, *supra*, 93 Cal.App.5th at p. 988, review granted.)

1

I agree that courts "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion'" in reviewing the record of conviction (*Lewis*, *supra*, 11 Cal.5th at p. 972), but when "the record … makes clear that [the petitioner] was the actual killer and the only participant in the killing," the petitioner "is not entitled to any relief under [Penal Code] section 1172.6." (*People v. Delgadillo* (2022) 14 Cal.5th 216, 233; see *People v. Garcia* (2022) 82 Cal.App.5th 956, 969–971 [where record of conviction "unequivocally establishes that defendant was the 'actual killer,'" defendant is not entitled to relief under Pen. Code, § 1172.6 as a matter of law].) The same principles should apply where the defendant is convicted of an attempted killing.

Here, defendant's plea included a stipulation that the preliminary hearing transcript established a factual basis, in a case where defendant failed to provide any factual allegations suggesting he was not the actual shooter and did not establish that the People prosecuted him under a theory of imputed malice or felony murder as an aider or abettor. In the present case, defendant did not object to the People's evidence and offered no evidence or argument that might have raised a factual issue as to his involvement in the attempted murder. We can therefore assess defendant's prima facie showing without "engag[ing] in 'factfinding involving the weighing of evidence'" or making any credibility determinations (*Lewis, supra*, 11 Cal.5th at p. 972), because defendant "offered no evidence to weigh, and did not dispute the evidence the district attorney submitted." (See *Pickett*, *supra*, 93 Cal.App.5th at p. 990, citing *Patton*, *supra*, 89 Cal.App.5th at p. 658, review granted [in summarily denying Penal Code § 1172.6 petition, court did not engage in factfinding or weighing of evidence where

2

uncontroverted preliminary hearing testimony showed that the defendant was the sole and actual perpetrator].)

Additionally, the preliminary hearing transcript is relevant to determine the prosecution's theory of the case and the scope of the charges alleged against a criminal defendant, without involving any credibility determinations or factfinding. Here, the record of conviction reveals defendant was not prosecuted under a now invalid theory of imputed malice (attempted murder requires a specific intent to kill (*People v. Mumin* (2023) 15 Cal.5th 176, 190) or felony murder.

Thus, as we held in *Pickett,* while the defendant included sufficient allegations to entitle him to the appointment of counsel, and included a legal conclusion in his petition that he could not now be convicted because of changes to the law affecting liability for attempted murder under Senate Bill No. 1437 (2017-2018 Reg. Sess.), he did not allege that he was not the actual shooter and there is nothing in the record to suggest that any other person was involved in the crime, so he was ineligible for resentencing as a matter of law. (*Pickett, supra*, 93 Cal.App.5th at p. 989, and cases cited.)

Granted, an intent to kill finding flowing from a conviction for attempted murder does not itself conclusively establish that a petitioner is ineligible for relief. (*People v. Curiel* (2023) 15 Cal.5th 433, 461, 463.) But "[w]hile a finding of intent to kill does not, itself, suffice to refute a petitioner's allegation under [Penal Code] section 1172.6, subdivision (a)(3), a trial court does not end its prima facie inquiry there. Other aspects

3

of the record, such as additional jury findings, might be relevant to the remaining elements of the relevant homicide offense and conclusively refute a petitioner's allegation that he or she could not be convicted of murder under current law." (*Curiel*, *supra*, at p 463.)

Here, in addition to the guilty plea which admitted the elements of attempted murder, including the specific intent to kill, as well as premeditation and deliberation, the defendant admitted personally discharging a firearm causing great bodily injury. Further, the prosecution did not proceed on a theory of imputed malice or felony murder, as is demonstrated by the nature of the allegations in the charging documents and the undisputed evidence from the preliminary hearing that defendant committed the crime alone. A defendant who was convicted on a still-valid theory of murder or attempted murder is ineligible for relief as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) Therefore, defendant was ineligible for relief as a matter of law.

The analytical error in the majority opinion is that it ignores the fact that no credibility assessment was required to demonstrate that the People did not rely on a now invalid theory of attempted murder in prosecuting defendant. It requires no improper credibility determination or factual finding to determine that, where the defendant was charged as the sole perpetrator, admitted he personally discharged a firearm causing great bodily injury, and did not provide any factual allegations suggesting he was not the actual shooter, he could still be found guilty of attempted murder even after the amendments to Penal Code sections 188 and 189.

The absolutist approach adopted by the majority is contrary to the Supreme Court's holding in *Lewis*, *supra*, 11 Cal.5th 952, which permits the trial court to consider the preliminary hearing transcript as part of the record of conviction to determine if the allegations of the resentencing petition have been refuted. I would not go so far. I agree that at the prima facie stage, a trial court should not make a factual determination that one of two or more perpetrators was the actual killer where there were multiple perpetrators, or where the evidence adduced at the preliminary hearing was in dispute. But where the evidence in the preliminary hearing transcript is undisputed, a trial court should be permitted to consider whether it refutes the allegations of the petition by demonstrating that the defendant was not prosecuted under a now-invalid theory as an aider/abettor to a felony murder, or under a theory of imputed malice.

Here, as the majority acknowledges, the preliminary hearing transcript contained uncontroverted evidence that Smith was the direct perpetrator of the attempted murder. I realize that we are writing in the sand until the Supreme Court answers the questions posed in *Patton* and *Pickett*, but I cannot subscribe to such an absolutist approach, given the inevitable outcome of an evidentiary hearing. I would affirm the judgment of the trial court.

RAMIREZ             

P. J.

5